Anthony C. MATHIS, Plaintiff–Appellant,

v.

JOHN MORDEN BUICK, INC.,
Defendant–Appellee.

No. 96–3482.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 27, 1998.

Decided Feb. 18, 1998.

**1154**

Eric J. Glover (argued), Sidley & Austin, Chicago, IL, for Plaintiff–Appellant.

Patrick J. Falahee, Jr. (argued), Strat G. Maheras, Chicago, IL, for Defendant–Appellee.

Before ESCHBACH, COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

After 18 years as an automobile salesman for other dealers, Anthony Mathis took a salesman's job at John Morden Buick in July 1984. Twenty-five months later, after he had been passed over three times for the post of sales manager, Mathis quit, filed a charge of race discrimination, and later sued under Title VII of the Civil Rights Act of 1964. By the parties' consent a magistrate judge held a bench trial and entered final judgment.

Mathis and John Morden, the dealership's owner, were the only witnesses. Mathis testified that Morden had recruited him with a promise that he would be in line for promotion to sales manager, that he was eminently qualified, and that only race could explain the adverse decision. (Mathis is black; every sales manager in the dealership's history, white.) Morden testified that he had not promised Mathis the job (or even promised consideration for the appointment), that he hired sales managers exclusively from outside the firm, and that only persons with managerial experience (such as having been owners of auto dealerships) were considered. Mathis lacked managerial experience. The magistrate judge believed Morden over Mathis and found among other things:

> Defendant had a firm policy of hiring from outside of its own work force in filling the sales manager position, and that only individuals who had prior managerial experience would be hired. No salesman was ever promoted to the position of sales manager. In seeking individuals for the sales manager position, Defendant sought individuals who could close a deal, motivate the salesmen to sell more cars, had experience in appraising used cars and who were knowledgeable in financing and insurance matters.

By this standard Mathis was not eligible for the position. He was an insider with no managerial experience, and limited knowledge about used cars, financing, and insurance. After concluding that Mathis's race did not affect the dealership's hiring decisions, the magistrate judge entered judgment for the defendant.

 Although discrimination is a question of ultimate fact, which is to say an inference based on subsidiary findings, appellate review remains deferential. *Pullman–Standard v. Swint*, 456 U.S. 273, 285–90, 102 S.Ct. 1781, 1788–91, 72 L.Ed.2d 66 (1982). The factfinder's resolution of a swearing contest, which this was, can be upset only if documentary evidence makes one decision the only tenable choice. *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Seshadri v. Kasraian*, 130 F.3d 798 (7th Cir.1997). Resolution of the swearing contest led straight to a conclusion that there had been no discrimination. There was precious little documentary evidence showing how the dealership filled the sales manager's job, and on many questions that the trier of fact deemed important— such as whether the dealership ever had promoted one of its salesmen to sales manager—the parties were in agreement. Most of Mathis's arguments on appeal concern issues at best peripheral to the resolution of this case. For example, Mathis contends that the

magistrate judge should have found in his favor all elements of a prima facie case—although that subject is irrelevant once a discrimination suit has been tried. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 505–12, 113 S.Ct. 2742, 2746–50, 125 L.Ed.2d 407 (1993); *Postal Service v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir.1997). It is therefore impossible to conclude that the magistrate judge's conclusion or even any of the subsidiary findings is clearly erroneous.

■ Having said this, we add a note of concern. Documents that might have undercut Morden's testimony were destroyed shortly before his deposition. Federal regulations require employers to preserve documents relevant to claims of discrimination—in particular, records concerning persons hired (or not hired) for the position sought by the complainant. 29 C.F.R. § 1602.14. Mathis did not rely wholly on the regulation. He served a document-production request under Fed.R.Civ.P. 34. Instead of complying or seeking relief under Rule 26(b), the dealership threw the documents away. In response, the court could have entered judgment for Mathis or taken any of the lesser steps authorized by Fed.R.Civ.P. 37(b)(2). Surprisingly, Mathis's counsel (a different lawyer from the one who represents him on appeal) did not file a motion for sanctions under Rule 37. Instead he raised the subject during cross-examination of Morden at trial, and in posttrial papers Mathis asked the magistrate judge to disbelieve Morden's explanation for his selection of sales managers, or to infer that the documents would have been unfavorable—perhaps because they would have showed that one or more sales managers lacked prior supervisory experience.

■ Mathis's perplexing failure to seek sanctions under Rule 37 forecloses access to the substantial weaponry in the district court's arsenal. See *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 755–57 (7th Cir.1994); *Butler v. Pettigrew*, 409 F.2d 1205, 1207 (7th Cir.1969).

What remains—the possibility of an adverse inference—depends on persuading the court that the evidence was destroyed in "bad faith". *Coates v. Johnson & Johnson,* 756 F.2d 524, 551 (7th Cir.1985). That the documents were destroyed *intentionally* no one can doubt, but "bad faith" means destruction for the purpose of hiding adverse information. Mathis argues that only the documents' contents could explain their destruction; the competing explanation is that they were destroyed incident to the end of the corporation's existence. John Morden Buick, Inc., closed its doors, and the corporation was dissolved, in 1992. (The defunct corporation remains the proper defendant, however, because corporations may be sued after dissolution during a winding-up period. See *Citizens Electric Corp. v. Bituminous Fire & Marine Insurance Co.,* 68 F.3d 1016 (7th Cir.1995); 805 ILCS 5/12.80. Such suits effectively are against the firm's insurers and against investors who received any liquidating distribution.) Morden sold the corporation's assets and found a new tenant for a building that he owned personally and had rented to his dealership. The documents apparently were destroyed in 1995 when a new tenant moved into the dealership's former premises. Morden had a legal obligation to preserve the documents, and perhaps the reason he failed to do this is that he knew (and feared) what they would reveal; but perhaps the explanation is benign.

"Bad faith" is a question of fact like any other, so the trier of fact is entitled to draw any reasonable inference. Unfortunately, the magistrate judge did not address the subject explicitly. Perhaps he deemed the possibility waived by its belated presentation in post-trial memos; perhaps he concluded that the destruction was not in bad faith; perhaps he thought that the resolution just didn't matter. The only contested issue that might have been illuminated by the documents was whether all of the firm's sales managers had supervisory experience. From what we can see, however, this is principally a semantic dispute. One person operated a used car lot before joining Morden as sales manager. Mathis insists that this is not the kind of experience Morden

says was a prerequisite, supporting an inference that the reasons for rejecting Mathis were pretextual; Morden replies that a used car dealer must appraise autos, handle financing and insurance, and so on, gaining the skills a manager at a new car dealer needs. How the missing documents would have helped the magistrate judge make progress in resolving this disagreement is unclear. But a lot of time would have been saved—for the parties and for this court—had the magistrate judge stated how he saw the missing-document problem.

As trier of fact, the magistrate judge did not need to discuss in detail all of the subsidiary issues that informed his resolution of the ultimate issue. *BASF Corp. v. Old World Trading Co., Inc.,* 41 F.3d 1081, 1098 (7th Cir.1994), accordingly holds that failure to discuss whether the spoliation of evidence was in "bad faith" does not require a remand, if the court of appeals concludes that the essential findings of fact are supported by the record. So too here. The magistrate judge should have been more explicit, but Mathis bears part of the responsibility for omitting a Rule 37 motion and not raising the issue forcefully during trial. Judges must be vigilant to prevent the destruction of evidence, but litigants who are not diligent in the defense of their own interests cannot expect rescue by appellate courts. The magistrate judge chose to credit Morden even after learning that he caused or tolerated the destruction of documents potentially relevant to the case. Only empty formalism would be served by remanding for additional proceedings.

Affirmed.