**Patti LOMBARD, Plaintiff,**

v.

**MCI TELECOMMUNICATIONS CORPORATION, et al., Defendants.**

**No. 1:97–CV–1631.**

United States District Court, N.D. Ohio, Eastern Division.

May 21, 1998.

Hilary S. Taylor, David Clifford Lamb II, Lisa K. Levine, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Patti Lombard.

Susan C. Hastings, Brian T. Robinson, Ardra M. O'Neal, Sanders & Dempsey, Cleveland, OH, for MCI Telecommunications Corp.

Barbara Kaye Besser, Elfvin & Besser, Cleveland, OH, for Richard E. Putt.

### MEMORANDUM & ORDER

O'MALLEY, District Judge.

Plaintiff Patti Lombard brings this action against her ex-employer, MCI Telecommunications Corporation ("MCI"). In her first amended complaint, Lombard alleges MCI retaliated against her for having earlier complained to the Equal Employment Opportunity Commission ("EEOC") of sexual harassment. Lombard further alleges MCI destroyed certain evidence normally contained in her personnel file, in order to support its position that she was terminated for poor performance. Lombard brings claims of: (1) retaliation, in violation of 42 U.S.C. § 2000e ("Title VII"); and (2) spoliation of evidence, in violation of Ohio common law and certain federal regulations.[1] For reasons made clear below, Lombard does not bring a claim for the original alleged sexual harassment.

Lombard has moved for partial summary judgment on her spoliation claim (docket no. 20), and MCI has moved for summary judgment on Lombard's retaliation claim (docket no. 21). In addition, MCI has moved to strike certain exhibits filed by Lombard in connection with her brief in opposition to MCI's motion for summary judgment (docket no. 40). For the reasons below, MCI's motion to strike is **DENIED**, Lombard's motion for summary judgment is **DENIED**, and MCI's motion for summary judgment is **DENIED**.

### I. Facts of the Case.

Because, as explained below in Section V of this opinion, the Court finds there exist material facts in dispute regarding Lombard's claim of retaliation, the Court does not set out here a full recitation of the alleged facts in this case. The facts related here simply serve as contextual background for the Court's discussion below.

In July of 1991, Lombard was employed as a sales person in MCI's Cincinnati, Ohio office. The Vice President of Sales in Lombard's division was Richard Putt. Putt was several levels of management higher than Lombard, and also worked in the Cincinnati office. On July 18, 1991, Lombard traveled to Chicago to receive a sales award at an MCI "recognition dinner." Putt was also at the dinner. After the dinner, Putt, Lombard, and several other MCI employees went out drinking together.

Later in the evening, Putt and Lombard shared a taxi back to the hotel at which they were both staying. When they arrived at the hotel, Putt suggested they share another drink in the hotel bar, and Lombard agreed. They learned that the hotel bar had closed, however, so Putt invited Lombard to go to his room for a drink. Lombard then demurred. Putt, however, was insistent—he grabbed Lombard by the arm, tried to pull her onto the elevator, and loudly urged her to join him despite her protestations. A hotel security guard heard the hubbub and intervened, literally stepping in between Putt and Lombard to separate them. Putt then entered the elevator alone and went to his room. Lombard was obviously shaken, so the security guard escorted her to her room.

About four weeks later, Lombard filed a charge of sexual harassment with the EEOC. MCI's director of human relations investigated Lombard's charge and determined Putt had "acted unprofessionally and contrary to [MCI's] policies prohibiting sexual harassment." MCI then essentially negotiated a settlement between itself, Putt and Lombard. The terms of the settlement were: (1) Putt apologized to Lombard; (2) MCI placed a letter of reprimand in Putt's personnel file for three years; (3) Putt had to participate in sexual harassment awareness training sessions; (4) MCI vacated a recent $7,000 raise Putt had received; (4) Lombard accepted a position in another sales division of MCI that did not report to Putt, and which brought a salary increase of about $6,000; and (5) Lombard was assured she would not have to report to Putt again. Although Lombard no longer reported to Putt, she remained in the

1. MCI disputes whether Lombard actually stated a claim for spoliation of evidence in her first amended complaint. The Court addresses this question in section IV of its opinion, below.

same Cincinnati office as Putt. After MCI negotiated this settlement, Lombard voluntarily withdrew her EEOC charge.

In her new position as sales person for MCI national accounts, which began in October of 1991, Lombard reported to Robert Heffron. Her first performance appraisal from Heffron, which occurred one year later in October of 1992, noted that she "fully met" all four of her "objectives," and "fully met" 10 of 11 of her "critical skills;" the eleventh critical skill she "consistently exceeded," One month later, in November of 1992, MCI reorganized its managerial structure and decided to reassign Putt to the national accounts division. This move placed Putt in a direct executive relationship with Lombard, although he was not her immediate supervisor. Before Putt was transferred, he contacted Lombard to find out if she minded working for him.[2] She told him she did not mind, although she now says she did mind and was afraid to say so.

Some time in 1992, Mark Ruhl joined MCI's national accounts division, reporting to Heffron. In October of 1992, at about the same time Lombard received her first performance appraisal from Heffron, and about the same time Putt became Lombard's executive superior again, Ruhl took on an "indirect supervisory" relationship, or "dotted line relationship," with Lombard. Ruhl immediately began documenting problems and deficiencies he perceived Lombard had in her job. Ruhl began this documentation shortly after a conversation he had with Putt, in which Ruhl states he expressed concern about Lombard's performance and Putt states he told Ruhl to document his concerns. Nine months later, MCI determined Lombard had to be terminated for poor performance and alleged falsification of expense reports. Subsequent to her termination, Lombard timely filed a complaint with the EEOC charging MCI with terminating her in retaliation for her earlier assertions of harassment. The EEOC concluded "that there is reasonable cause to believe that the charge is true."

## II. Summary Judgment Standards.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of materi-

---

**2.** It is at best unclear whether Lombard could actually have vetoed Putt's reassignment based on MCI's alleged earlier promise that Lombard would not have to report to Putt ever again.

al fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–44, (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III. MCI's Motion to Strike.

 In response to MCI's motion for summary judgment, Lombard filed an opposition brief containing 20 exhibits. MCI argues 3 of these exhibits should be stricken from the record. Specifically, MCI argues the Court

should strike: (1) Lombard's own affidavit, because it contradicts her earlier sworn deposition testimony; (2) an expert's report, because it is unsigned and does not disclose the data upon which the expert relied to reach her conclusions; and (3) a gender discrimination charge filed by another MCI employee in Massachusetts, because it is irrelevant. MCI does not propose a viable means, however, for this Court to strike Lombard's exhibits.

While some courts have employed Rule 12(f) to strike an affidavit or portions thereof, *McLaughlin v. Copeland,* 435 F.Supp. 513 (D.Md.1977), there is no basis in the Federal Rules for doing so. In fact, a decision in this district, affirmed by the Sixth Circuit Court of Appeals, refused to employ Rule 12(f) to strike an affidavit because "the rule relates only to pleadings and is inapplicable to other filings." *Dawson v. City of Kent,* 682 F.Supp. 920 (N.D.Ohio 1988), *affirmed,* 865 F.2d 257 (6th Cir.1988). The cases cited by MCI make clear that a Court should *"disregard"* inadmissible evidence, not strike that evidence from the record. *State Mut. Life Assur. Co. of America v. Deer Creek Park,* 612 F.2d 259, 264 (6th Cir.1979) (emphasis added); *see also Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992). Therefore, MCI's motion to strike the exhibits is denied.

The Court has, however, excluded from its consideration those portions of the exhibits that are hearsay, not based on personal knowledge, irrelevant, or otherwise inadmissible.[3]

### IV. Lombard's Motion for Partial Summary Judgment.

In her motion for partial summary judgment, Lombard asserts she is entitled to summary judgment on her claim for spoliation of evidence. MCI responds with two arguments: (1) Lombard never asserted any such claim in her complaint; and (2) even if

---

**3.** Generally, the Court did not exclude from its consideration Lombard's affidavit, because it finds the alleged inconsistencies between the affidavit and Lombard's earlier sworn deposition testimony are insignificant. The Court did exclude from its consideration Knapp's expert report, both because the Court did not need any

expert opinion to reach its conclusions and because Knapp's report was not signed, as required by Fed.R.Civ.P. 26(a)(2)(B). Finally, the Court agrees that the Massachusetts gender discrimination charge, to which Lombard did not even refer in her briefs, is irrelevant and unduly prejudicial.

she did, she is not entitled to judgment as a matter of law.

### A. Lombard's Complaint.

Regarding MCI's first argument, MCI notes that, in the jurisdictional allegations of Lombard's complaint, Lombard alleges only that "[t]his Court has jurisdiction of *the* claim herein pursuant to 28 U.S.C. §§ 1331 and 1332.... Plaintiff is alleging a violation of her rights under Title VII...." Complaint ¶ 1 (emphasis added). Lombard does not mention any state law claims, nor does she invoke 28 U.S.C. § 1367, the statute governing supplemental jurisdiction.

Further, in the portion of her complaint labeled "STATEMENT OF CLAIMS," Lombard again refers only to federal law—she alleges she has met the procedural requirements of 42 U.S.C. § 2000e by timely filing a charge with the EEOC, and by filing this action within 90 days of receiving a "right-to-sue" letter. *Id.* ¶ 7. Lombard makes no reference to any claim other than her Title VII claim in her "statement of claims." The next section of Lombard's complaint is captioned "COUNT I;" there is no Count II. *Id.* at 3. In this single count, Lombard alleges all of the factual details supporting her case. The next and last section of the complaint is Lombard's prayer for relief. In her prayer, Lombard requests only remedies connected to her Title VII claim; she makes no explicit request for relief stemming from a *state law* claim of spoliation of evidence. *Id.* at 8–9. Lombard does, however, request "a declaratory judgment that the acts, policies, practices and procedures of defendants [sic] complained of herein violated and continue to violate the rights of plaintiff under ... [42 U.S.C. § ]2000e–5 for the destruction of records while an active charge was filed." *Id.* at 9 ¶ (k). Lombard also requests "other further relief as may be just and equitable." *Id.* ¶ (j).

The only place where Lombard's complaint specifically addresses destruction of evidence is at the very end of the allegations contained in "Count I." The complaint alleges:

(43) Defendant MCI and Putt conducted an extensive cover up of their actions. For example, plaintiff received numerous commendations throughout her career. However, defendant MCI and Putt have purged her personnel file of all positive comments in favor of negative documentation. *All this was part of [the] retaliation against plaintiff by defendant MCI and Putt.*

(44) Defendant MCI has further purged from its records all its documentation of the July 18, 1991 incident and as of June 6, 1997, was unable to produce the statements, records, etc., of the investigation.

Complaint ¶¶ 43–44 (emphasis added). In her motion for partial summary judgment, Lombard argues her complaint states a claim for spoliation of evidence under Ohio common law and also under applicable federal regulations.

MCI responds that on the basis of the above-quoted language, Lombard never asserted a claim for spoliation of evidence in her complaint.[4] MCI adds, correctly, that "plaintiffs may not use a summary judgment motion to raise a claim they did not plead in their complaint." *Day v. Sullivan,* 794 F.Supp. 801, 812 (S.D.Ohio 1991), *affirmed in relevant part sub nom, Day v. Shalala,* 23 F.3d 1052 (6th Cir.1994). Accordingly, MCI asks the Court to deny Lombard's motion on the basis that she never asserted a spoliation claim in the first place. Implicitly, MCI also asks the Court to preclude Lombard from pursuing any such claim at trial.

Whether Lombard sufficiently stated a spoliation claim under state or federal law in her complaint is governed by Fed.R.Civ.P. 8(a). This rule states, in pertinent part: "[a] pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Based on this rule, the Court finds that Lombard did not adequately state an Ohio common law

---

4. Upon receiving Lombard's motion for summary judgment, MCI was apparently surprised to learn that Lombard believed she had asserted a spoliation claim, much less that she believed she was entitled to summary judgment on that claim.

Thus, MCI did not caption its own motion as one for *partial* summary judgment, because it believed a motion addressed to Lombard's retaliation claim alone was sufficient to obtain summary judgment on the entire case.

claim for spoliation of evidence. Further, the Court finds that no claim for spoliation of evidence exists under federal law.

■ Regarding state law, it is clear that a claim for spoliation of evidence does exist under Ohio common law. *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 615 N.E.2d 1037, 1038 (1993). The Court finds, however, that the allegations contained in Lombard's complaint do not give MCI sufficient notice that Lombard intended to bring any such claim. Early in her complaint, Lombard refers to "*the* claim" she is asserting, and refers only to Title VII. In her "statement of claims," she refers only to federal law. She presents her all of her detailed allegations in only one "count." Within that single count, when she refers to the alleged destruction of evidence, she explicitly notes that this destruction was "*part of [the] retaliation* against plaintiff by defendant MCI." Neither Lombard's jurisdictional allegations nor her prayer give MCI any clue that she is attempting to assert a state common law claim of any kind.

Rule 8(a) is meant, at a minimum, to "place the opposing party 'on notice' of the nature of the claim." *Veney v. Hogan*, 70 F.3d 917, 921 (6th Cir.1995).[5] The Court finds that the allegations and prayer contained in Lombard's complaint do not give MCI sufficient notice that Lombard sought to assert a state law claim for spoliation of evidence. Simply, a straightforward reading of the complaint does not give a reasonable defendant any basis to believe Lombard is advancing any such state law claim. Because MCI did not have notice that Lombard intended to bring a state law claim for spoliation of evidence,

MCI is entitled to summary judgment on this claim.[6]

■ In addition to state law, however, Lombard asserts she has stated a claim for spoliation of evidence under federal law. As the basis for her argument that such a claim even exists under federal law, Lombard cites 29 C.F.R. § 1602.14. The Supreme Court has addressed this regulation in *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984), stating:

> Pursuant to the authority conferred upon it by 42 U.S.C. § 2000e– 8(c), the EEOC has promulgated 29 C.F.R. § 1602.14, which requires an employer covered by Title VII to retain all personnel records for six months after they are created and, *when a charge of discrimination has been filed against the employer, to retain all records relevant to the charge until the dispute is resolved.*

*Id.* at 78 n. 35, 104 S.Ct. 1621 (emphasis added). Lombard alleges that MCI destroyed critical and relevant personnel records after she filed the EEOC retaliation charge that ultimately led to her complaint in this case. If Lombard is correct, MCI has violated 29 C.F.R. § 1602.14. Lombard argues she thus states a claim for spoliation of evidence under federal law, to which she is entitled to summary judgment.

The Court finds, however, that a violation of 29 C.F.R. § 1602.14 is not actionable *per se*. There are two bases for this conclusion. First, § 1602 contains no language suggesting that an employer's failure to maintain records in accordance with the regulation gives the employee a right to sue for damages.[7] Second, several courts have ad-

---

5. In fact, *Veney* holds that Rule 8(a) requires a plaintiff to give a defendant much more than only "notice" of the nature of her claim. As the *Veney* court explained:

> There is an unfortunate tendency in some quarters to overstate the liberality of the reform in pleading practice wrought by the adoption of Federal Rule of Civil Procedure 8. *See* 5 Wright & Miller, *Federal Practice & Procedure Civil* 2d § 1202 (1990) (criticizing use of term 'notice pleading'). Some appear to argue that one need only place the opposing party 'on notice' of the nature of a claim and that conclusory allegations will suffice, when in reality the rule envisions a 'statement of

circumstances, occurrences, and events in support of the claim presented.... [T]he complaint must disclose information with sufficient definiteness.' *Id.* § 1201 n. 11 (1990) (quoting Advisory Committee's 1955 Report).

*Veney*, 70 F.3d at 921–22.

6. The Court recognizes that granting summary judgment to MCI on a claim Lombard "never stated" is a somewhat of a non sequitur; the point, of course, is that Lombard cannot pursue any such claim as a matter of law.

7. To the contrary, 29 U.S.C. § 1602.56 states only that the if the EEOC "has received an allegation, or has reason to believe, that a person

dressed the question of the appropriate remedy for an employer's failure to abide by § 1602.14. These Courts all agree that, if MCI failed to preserve its records as required, then Lombard is "entitled to the benefit of a [rebuttable] presumption that the destroyed documents would have bolstered her case." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1419 (10th Cir.1987); *Lucas v. Brooklyn Academy of Music*, 129 F.3d 113, 1997 WL 716102 at *2 (2nd Cir.1997); *Favors v. Fisher*, 13 F.3d 1235, 1239 (8th Cir. 1994). In addition, if the facts prove egregious enough, Lombard could be entitled to sanctions. *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir.1998).[8] No court, however, has suggested that an appropriate remedy is damages or other relief pursuant to a separate cause of action. Thus, MCI is entitled to summary judgment on Lombard's asserted claim for spoliation of evidence under federal law, because no such independent cause of action exists.

In sum, the Court finds MCI is entitled to summary judgment on Lombard's asserted claim for spoliation of evidence. The Court further finds, however, that if Lombard can prove MCI did fail to follow the document preservation rules set out in 29 C.F.R. § 1602.14, then Lombard is entitled to the benefit of a rebuttable presumption that the missing documents would have bolstered her case. Depending on the circumstances, Lombard may also be entitled to other instructions or remedial orders from the Court.

■ Because the parties addressed the specific question of whether MCI violated 29 C.F.R. § 1602.14 in their briefs regarding Lombard's motion for partial summary judgment (albeit within a different context)—and because whether Lombard is now entitled to this presumption may have some bearing on MCI's motion for summary judgment on Lombard's retaliation claim—the Court now turns to the question of whether MCI

breached the requirements of 29 C.F.R. § 1602.14.

*B. 29 C.F.R. § 1602.14.*

The federal regulation in question, which governs "preservation of records made or kept" by employers, reads, in pertinent part, as follows:

> Where a charge of discrimination has been filed ... against an employer under title VII or the ADA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person.... The date of "final disposition of the charge or the action" means ..., where an action is brought against an employer ... by the aggrieved person ..., the date on which such litigation is terminated.

29 C.F.R. § 1602.14. Put more simply, the regulation states that, once an employer learns an employee (or ex-employee) has filed a charge of discrimination against it, the employer cannot destroy or discard any relevant personnel records. "Relevant personnel records" might include records pertaining not only to the complaining employee, but also pertaining to the employee's supervisor, underlings, peers, or any other employee, depending on the facts of the case.

In this case, Lombard filed with the EEOC a charge against MCI, complaining of discriminatory retaliation, on August 31, 1993. After the EEOC determined "there is a reasonable basis to believe the charge is true," it issued Lombard a right to sue letter; Lombard subsequently filed this case. Thus, as of August 31, 1993, MCI was bound by the applicable regulation to "preserve all [then-existing] personnel records relevant to the

---

has not complied with the ... record keeping requirements ..., [it] may conduct an investigation of [an] alleged failure to comply." See also 29 C.F.R. § 1602.9, which states that the EEOC may apply to a district court for injunctive relief if an employer fails to file an information report with the EEOC. These provisions tend to suggest, by negative implication, that no private

right of action exists for an employer's failure to maintain records.

**8.** Conceivably, if the evidence shows MCI destroyed evidence to further its retaliatory goals, Lombard could also be entitled to an instruction on punitive damages.

charge or action until final disposition of" this case.

During discovery, Lombard inquired into the investigation MCI had conducted regarding Putt's original harassment of Lombard in 1991. MCI stated that Lou Hunt, MCI's director of human relations, had interviewed Putt, Lombard, and the security guard who witnessed Putt assault Lombard. These interviews occurred in the latter half of 1991. Hunt reduced his findings to a written memorandum, which was placed in Putt's personnel file. In addition, a letter of reprimand was ultimately placed in Putt's personnel file. MCI states that, as to at least the letter of reprimand—if not Hunt's memorandum— MCI agreed to maintain this document in Putt's personnel file for three years.[9] Thus, MCI admits it obligated itself to preserve Putt's letter of reprimand, at least, until sometime in the latter part of 1994. Given that Lombard filed her EEOC charge in August of 1993, MCI should have then continued to preserve the letter of reprimand, and any other existing relevant personnel documents, through today. MCI, however, states that the letter of reprimand, as well as "copies of incident reports related to the August 14, 1991 incident [between Putt and Lombard], to the extent they existed, have not been maintained." Based on this undisputed record, Lombard is entitled to the benefit of a rebuttable presumption that the missing or destroyed[10] documents would have bolstered her case.[11]

The question remains exactly what the extent of that presumption should be. MCI argues that the missing documents are not "relevant personnel records" in this case because they relate only to Lombard's original charge of sexual harassment by Putt, not to her current claim of retaliation. The Court does not construe the term "relevant" so narrowly. While a claim of retaliation does not depend upon the *validity* of an underlying claim of discrimination, it does depend upon the *existence* of the underlying claim, making information about the underlying claim clearly relevant. Further, a jury could logically find data regarding the underlying claim relevant to the question of intent, purpose, and pretext in the context of the retaliation claim. In the end, the Court must await the parties' presentation of evidence at trial to determine the extent and weight of the presumption to which Lombard is entitled, and to determine whether MCI can overcome that presumption.

*V. MCI's Motion for Summary Judgment.*

■ In order to prevail on her retaliation claim, Lombard must satisfy the burdens of proof outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To avoid summary judgment, Lombard must first make out a prima facie case of retaliation. To make out a prima facie case, Lombard must demonstrate that: (1) she engaged in protected activity; (2) the defendant knew she engaged in this protected activity; (3) the defendant

9. *See* deposition of Putt at 114 ("I would assume it was expunged after three years, according to what Lou Hunt told me"); MCI's motion at 6 ("the written reprimand was placed in Putt's file for three years").

10. MCI insists there is no evidence that the documents were "destroyed," only that it cannot find them. Regardless of whether MCI purposely destroyed the documents, or merely lost them when it closed and relocated its human resources office, MCI did not "preserve" the documents as required. Whether MCI wilfully destroyed the documents or merely lost them may be relevant to whether sanctions are appropriate, *see Mathis*, 136 F.3d at 1155–56, and may be relevant to the propriety of a punitive damages instruction at trial, but it has no bearing on whether Lombard is entitled to the presumption in question.

11. MCI argues it had "no legal obligation to maintain any investigative documents beyond 1991" and that "[w]hile Putt was told the reprimand would be in his file for 3 years, this statement did not create any legal obligation by [MCI] or any incidental benefit to [Lombard]." Response at 4. While it is true that MCI had no legal obligation to preserve any investigative documents or the letter of reprimand *before* August 31, 1993, it is also true that if MCI voluntarily preserved these documents until that date, it did have a legal obligation to preserve them thereafter. MCI does not argue the investigative documents and letter of reprimand were discarded before August 31, 1993, and, to the contrary, admits it told Putt it would preserve the letter of reprimand until late 1994. Thus, Lombard is entitled to the rebuttable presumption discussed above.

took an adverse employment action against her; and (4) there was a causal connection between her protected activity and the adverse employment action. *Id.* at 802, 93 S.Ct. 1817; *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir.1997). If Lombard successfully proves a prima facie case, the burden shifts to MCI to articulate some legitimate, nondiscriminatory reason for the adverse employment action. Once MCI carries this burden, the burden shifts back to Lombard to prove by a preponderance of the evidence that the legitimate reasons offered by MCI were not its true reasons, but were a pretext for discrimination. *Canitia v. Yellow Freight Sys.*, 903 F.2d 1064, 1066 (6th Cir.1990), *cert. denied,* 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990).

■ The basis for MCI's motion for summary judgment is that Lombard has not made out a prima facie case of discrimination. MCI does not, in its motion, argue in the alternative that it is entitled to summary judgment because, even if Lombard does make out a prima facie case, it has articulated a legitimate non-discriminatory basis for its actions which Lombard cannot show is pretextual. MCI argues only that Lombard has not established the second or fourth prongs of her prima facie case.[12]

The second prong of Lombard's prima facie case is that MCI "knew she engaged in protected activity," and the fourth prong is that "there was a causal connection between Lombard's protected activity and the adverse employment action." MCI argues that Lombard cannot establish either of these prongs because she cannot show it "knew" she had

earlier filed a sexual harassment claim and terminated her because of it.

There is no question, of course, but that Putt, Hunt, and other officer-level employees of MCI knew Lombard had earlier filed a sexual harassment claim against MCI. MCI argues, however, that there is no reliable evidence that Heffron or Ruhl, who were Lombard's *direct* supervisors when Lombard was terminated, themselves knew Lombard had filed the sexual harassment claim. MCI insists that only Heffron and Ruhl actually made the decision to terminate Lombard, and because *they* were unaware of Lombard's earlier protected activity, MCI cannot be said to have "known" she engaged in protected activity for the purpose of establishing a prima facie case. MCI further argues that, because neither Heffron nor Ruhl knew Lombard had engaged in protected activity, Lombard cannot show her termination was a consequence of her having filed the earlier EEOC claim.

■ Although the evidence adduced so far suggests MCI's argument is strong, the argument depends on its own version of the facts—that is, Heffron and Ruhl were acting completely on their own and without any input from Putt, or any thought as to how Putt, their superior, might perceive or welcome their actions. Heffron, Ruhl, and Putt do testify in deposition that they did not substantively confer about terminating Lombard, and that the decision to terminate her was dependent only on her lack of performance. Viewing the evidence in a light most favorable to Lombard, however—as the Court is required to do in the present posture of this case—the Court finds material issues of fact remain. There exists evidence

**12.** In a footnote in its motion, MCI briefly asserts that, even if Lombard makes out a prima facie case, MCI is still entitled to summary judgment because it had legitimate business reasons to terminate her (specifically, she allegedly failed to meet performance requirements and falsified an expense report). Motion at 12 n. 12. MCI makes this argument in only two sentences, however, and adds that, because Lombard cannot make out a prima facie case, "it is unnecessary for this Court to analyze the parties' shifting burdens of proof." *Id.* Despite taking this position in its motion, MCI then fully addresses the parties' shifting burdens in its response brief,

offering five pages of argument regarding the legitimacy of its actions and absence of pretext. It is inappropriate for MCI to make this argument for the first time in its response brief, thereby depriving Lombard of a meaningful opportunity to respond. Accordingly, the Court ignores this portion of MCI's response brief. Lombard must be cautioned, however, that her claims thus remain susceptible to judgment as a matter of law at trial, pursuant to Fed.R.Civ.P. 50, if the facts regarding the legitimacy of MCI's actions and absence of pretext appear not to be in dispute.

that: (1) MCI promised Lombard that Putt would never again have an executive relationship over her; (2) MCI did not keep this promise; (3) just before MCI broke this promise, Lombard received a favorable performance review; (4) immediately after MCI broke this promise, Ruhl, whom Putt supervised, began to document Lombard's alleged performance problems and deficiencies; (5) Putt was aware of Ruhl's scrutiny of Lombard; (6) Ruhl's scrutiny was both broad and deep, and he documented even the most minor aspects of Lombard's activity at work; (7) several months after Ruhl began scrutinizing Lombard, MCI placed Lombard on "probation" for the first time in her career; and (8) shortly thereafter, MCI terminated Lombard. This evidence is sufficient to make out a prima facie case of retaliation.[13]

Because Lombard has made out a prima facie case, MCI's motion for summary judgment must be denied. It is true, as MCI argues in its reply brief, that there exists strong evidence that MCI had legitimate, non-pretextual reasons for terminating Lombard. It is also true, however, as Lombard claims, that the reporting relationship MCI created between Lombard and her supervision was highly unusual. The parties will have to await trial, however, for a determination by the Court (via Rule 50) or a jury (via verdict) whether that evidence entitles MCI to judgment in its favor.

**IT IS SO ORDERED.**

---

**13.** MCI argues that, because the span of time between Lombard's filing of her original sexual harassment EEOC charge and her ultimate termination was almost two full years, there can be no inference that MCI had a retaliatory motive. The Court disagrees in the context of this case because of the coincidence in timing between Putt's return to a superior position over Lombard, Ruhl's documentation of Lombard's alleged failures, and Lombard's termination. It was only after Putt returned to an executive position over Lombard that he would have been in a position to engineer her termination. Thus, most of the two year period between Lombard's original EEOC charge and her termination represents a time during which Putt could not have directly taken or "masterminded" any retaliatory action himself.