FILED
United States Court of Appeals
Tenth Circuit

July 19, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

THUC TRAN,

Plaintiff-Appellant,

v.

SONIC INDUSTRIES SERVICES,
INC.,

Defendant-Appellee.

No. 11-6032
(D.C. No. 5:10-CV-00069-C)
(W.D. of Okla.)

ORDER AND JUDGMENT[*]

Before **LUCERO**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

Thuc Tran is a former employee of Sonic Industries Services, an Oklahoma

food service company. In 2008 she was passed over for a promotion and then

terminated in 2009 after being placed on a performance improvement plan. She

filed suit, claiming that the company failed to promote her and then wrongfully

discharged her on the basis of race, national origin, and gender in violation of

Title VII of the Civil Rights Act of 1964.

_____

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

The district court granted summary judgment in favor of Sonic, finding that although Tran presented a prima facie case of discrimination, she failed to show that Sonic's legitimate business justifications for its failure to promote her and her subsequent termination were pretextual.

We affirm.

## I.  Facts

The parties are familiar with the facts, so we provide only a brief overview for purposes of discussion.  Sonic is a fast food chain with corporate headquarters in Oklahoma City.  In 2008, the company reorganized, creating several vacancies, including a vacancy for a management position in Sonic's marketing department.

At that time, Tran, a woman of Vietnamese ancestry, worked as a research analyst in the marketing department.  She applied for the promotion but did not receive it.  The principal decision maker for filling the position was Paul Macaluso, Sonic's Chief Marketing Officer, who had worked closely with Tran and other candidates in the past.  He chose Trey Taylor, a co-worker of Tran's, for the position.  As a director, Taylor became Tran's new supervisor.

When Taylor became Tran's immediate supervisor their relationship immediately began to sour.  Tran alleges that Taylor disliked strong, assertive women, and thought that women should demonstrate a submissive attitude.  As evidence, she claims Taylor in the past asked her to inform two vendors to change sales representatives because the women reps were too aggressive.  She also

claims that he consistently chose male vendors, or vendors with male spokesmen, when he could have contracted with women. She did not, however, report these incidents internally as inconsistent with Sonic's non-discrimination policy.

Sonic argues that Tran resented Taylor's promotion, refused to respect his position, and interacted negatively with senior management. Among other things, Sonic points to a series of events beginning in November of 2008 where Tran displayed poor people skills and alienated a number of Sonic's managers. One example is a meeting where Tran interrupted Taylor and Macaluso, making statements that undercut the positions they were advocating in front of Sonic's CEO.

After that incident, Taylor sent Tran a memorandum outlining performance expectations. The memo contained a list of changes that Tran needed to improve her performance. Nonetheless, the next month Taylor placed her on a formal "Performance Improvement Plan" (PIP), an internal process to document and correct underperforming employees.

In June 2009 Sonic's marketing department conducted a review of its underperforming employees. Taylor recommended Tran's termination on the ground that she had not sufficiently improved her performance or responded well to the concerns in the PIP, and he suggested that she be replaced by another woman in his department. Sonic then terminated Tran and a white male, the only two employees on a PIP at the time.

# II. Discussion

Tran raises two issues on appeal relating to her Title VII claims, contending factual issues prevent summary judgment on her failure to promote and wrongful termination claims. She also appeals summary judgment in favor of Sonic on an affirmative defense and asserts the district court abused its discretion in several discovery matters.

"We review a grant of summary judgment de novo." *MacKenzie v. Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) (citations omitted). "Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof." *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995) (citation omitted); "Unsupported conclusory allegations, however, do not create an issue of fact." *MacKenzie*, 414 F.3d 1266, 1273 (10th Cir. 2005). To oppose summary judgment, plaintiffs must do more than provide their subjective interpretation of the evidence, they must marshal admissible evidence of material fact. *Luster v. Vilsack*, 667 F.3d 1089, 1094 (2011).

With this standard of review in mind, we consider Tran's two Title VII claims.

## A. Title VII Claims

### 1. Failure to Promote

Tran first claims she was wrongfully denied a promotion because of her race and gender.

We evaluate this claim under the three-step *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Following this familiar framework, a plaintiff must first establish a prima facie case of discrimination. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114 (10th Cir. 2007). To establish a prima facie case for failure to promote, the plaintiff must demonstrate "(1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled by someone outside the protected class." *MacKenzie*, 414 F.3d at 1278.

Sonic does not contest that Tran has made out a prima facie case. Accordingly, under *McDonnell Douglas*, the company must "articulate a legitimate, nondiscriminatory reason for its employment action." *Id*. If it does, Tran must "proffer evidence demonstrating the employer's reason is pretextual." *Id*. Pretext can be established "by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* (citation omitted). To "suggest that something

-5-

more nefarious might be at play" than a legitimate business rationale, a plaintiff "must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda." *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (citation omitted).

Sonic articulated several legitimate business reasons for preferring Taylor over Tran. According to Macaluso, who was primarily responsible for the promotion decision, he looked for a candidate who could bring a fresh approach to gathering and interpreting consumer data; interact well with senior management; and bring demonstrated leadership skills. Prior to the selection, Macaluso had worked with other potential candidates in the department, including both Taylor and Tran, for a number of years and knew each of them well.

Tran points to nothing that undercuts the legitimacy of the skills Sonic sought in the new supervisor, and does not claim the company's reasons were facially improper. *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1195 (10th Cir. 2006) (Skills such as "team building, personal leadership, and personal accountability" are proper for employee evaluations.). Nor does she offer any evidence that Macaluso harbored any bias against women or Vietnamese people. In fact, Tran admitted in her deposition that she had never heard any biased remarks from Macaluso or the other supervisors she worked for in the past.

Instead, Tran claims the promotion criteria were overly subjective and that she was better qualified and had more seniority than other candidates. "Although 'the presence of subjective decision-making can create a strong inference of discrimination,' the use of subjective considerations by employers is 'not unlawful per se.'" *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1145 (10th Cir. 2009) (quoting *Bauer v. Bailar*, 647 F.2d 1037, 1045–46 (10th Cir. 1981)). "We thus typically infer pretext only when the criteria on which the employers ultimately rely are *entirely subjective* in nature." *Turner*, 563 F.3d at 1145 (citations omitted).

The job criteria Sonic used were not entirely subjective. Tran apparently had only limited experience in leadership positions, a fact she does not dispute. And personal skills such as communicating and working effectively with senior management have an obvious objective component to them. Nor is there any cause to suspect these reasons were a cover for invidious discrimination in this case. Tran testified that neither Macaluso nor her other supervisors exhibited any racial or gender bias prior to filling this vacancy.

Tran nonetheless argues that these factors, when paired with evidence showing she was better qualified than Taylor, support an inference of pretext. In cases where there are competing qualified candidates, "to suggest that an employer's claim that it hired someone else because of superior qualifications is pretext for discrimination rather than an honestly (even if mistakenly) held belief,

a plaintiff must come forward with facts showing an overwhelming disparity in qualifications." *Johnson*, 594 F.3d at 1211 (quotation omitted).

Here, Sonic never contended Tran was not qualified, but Tran also does not demonstrate that Taylor was unqualified for the position. Taylor and Tran were similarly situated, each with several years of experience with the company, but in different departments and with different responsibilities. Tran had more seniority with Sonic, but Taylor had substantial relevant prior work experience. Each had similar years of experience in the marketing field, although Tran's experience dealt more with quantitative research and Taylor's included more supervisory roles and experience dealing with customers. There was no "overwhelming disparity in qualifications." *Id.*

Looking at the evidence in the light most favorable to Tran, we see no basis from which a jury could find that Sonic's choice was anything other than a good faith business decision. Accordingly, we conclude the district court did not err in granting summary judgment in favor of Sonic on her failure to promote claim.

### 2. *Wrongful Termination*

Tran also alleges she was wrongfully terminated because of her race and gender.

The district court found Tran made out a prima facie case of wrongful termination by showing she "(1) belonged to a protected class; (2) was qualified for her position; [and] (3) was discharged." *Plotke v. White*, 405 F.3d 1092, 1099

-8-

(10th Cir. 2005). As with the failure to promote claim, the burden then shifted to Sonic to show a legitimate, nondiscriminatory reason for her discharge.

Sonic again does not challenge Tran made out a prima facie case. But it contends it had adequate reasons for terminating her, including her ongoing poor skills in dealing with senior management, her increasingly negative attitude and poor working relationship with Taylor, her performance problems that were highlighted in the PIP, and her failure to make substantial improvements in meeting the goals of the PIP.

In support of these justifications, Sonic points to Tran's work history in the months prior to her termination. In a memorandum prepared in June 2009, prior to her termination, Taylor documented the deterioration in her work in the preceding months and her failure to meet the expectations of the PIP. The memorandum documents several specific incidents in support of these observations, including her failure "to complete key projects in a timely manner"; her failure "to complete some projects in a comprehensive manner"; her "comments, tone, and body language"; and her failure to better evaluate vendors for price and quality. App., V.II at 607.

Based on this track record, Taylor recommended termination. Sonic pointed to several incidents that illustrate the concerns expressed by the PIP and the June memo. The first incident occurred at a meeting in November 2008, and is consistent with the PIP in January. At this meeting, the marketing team—

including Tran—gave a new product presentation to the senior management and Sonic's CEO. Tran repeatedly interrupted or contradicted Taylor and other presenters, and at one point the CEO was visibly irritated with her, turning his chair around and holding up his arms as she spoke. The incident was serious enough that the day after the meeting, Macaluso sent an email to the CEO: "I would be remiss if I didn't mention that [Taylor] and I have already connected about what we thought was ineffective interaction on the part of [Tran]. We have plans to meet with her early next week to provide her with the appropriate coaching." App., V.II at 539. After this meeting with Tran, Taylor emailed Macaluso:

> i talked to thuc for 30mins yesterday after we met with her. her head seems to be in the right place. she appreciates receiving the feedback and views it as constructive . . . though she is still frustrated with herself. she looks forward to the challenge of improving. i gave her some specific pointers on how to interface with mgmt . . . most of it relates to the concepts of being brief, listening/allowing people to talk, saying "we'll get back with you," etc. if you want specifics, i will share. all in all, i think she is ready to learn and improve . . . and, i'd like to give her her chance at the first "state of the consumer" update in sr mgmt. thoughts or feedback? trey

App., V.II at 540 (typos in original). Macaluso replied, "I am open to her having a small part of the presentation, but want to discuss giving her a little break (or rather, giving Sr. Management a little break from her)." App., V.II at 541.

Sonic placed her on a PIP two months later in January 2009. The PIP outlined a number of areas where Tran needed improvement, including

"commitment to helping evolve the department, level of respect you display, timely project follow-up, positive attitude, improved communication, and understanding team member roles." App., V.II at 604. The plan also urged her to "show a willingness to embrace your superiors' decisions even when they differ from your preferences" and not "talk negatively about insights-team members (including your department seniors) without them present." *Id*. at 605. The PIP detailed nine "core competenc[ies]" where she needed improvement. She signed the PIP on January 15, 2009.

While Tran characterizes the PIP as subjective, most of the skills it describes are common workplace competencies. Tran does not believe that the PIP accurately reflects her work performance. But those views show a difference of opinion, not evidence of discrimination. An employee's disagreement with her employer's opinion of her performance "obviously does not prove discriminatory intent." *Durham v. Xerox Corp*., 18 F.3d 836, 839 (10th. Cir. 1994). Nor does a claim, unsupported by evidence, that "her superiors gave her artificially low ratings in her evaluations." *Id*.

Sonic points to other incidents in March and June 2009 where Tran failed to produce timely or complete work. Again, Tran has her own subjective view of her performance, but to defeat a motion for summary judgment, "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875–76

-11-

(10th Cir. 2004). "The subjective nature of the evaluations may be a factor to consider in pretext but it ordinarily is not by itself sufficient to establish pretext." *Pippin*, 440 F.3d at 1195. And a company may take into account "such subjective considerations as team building, personal leadership, and personal accountability" when they "also require[] the employee's immediate supervisor to enumerate specific results achieved with supporting examples." *Id.* In short, Tran has not adduced sufficient evidence that Sonic's stated exercise of business judgment in evaluating her performance was actually a cover for racial or gender bias.

Tran points to several other reasons she suspects pretext. Tran claims she received positive evaluations from her supervisors before she began working under Taylor and positive reviews from her coworkers during the period when she was already on the PIP. But the company hired an outside consultant in early 2009 to prepare a performance review of its employees, and the results of this evaluation largely supported Taylor's observations. It showed that other senior managers and Tran's supervisors rated her at low levels even though she was rated higher by some of her peers. *See*, App., V.II at 565–83.

Finally, Tran claims that there is evidence that Taylor was biased against women. She points to several incidents where Taylor "would make comments about some of the vendors that we work with who are female, and he would say, 'She's aggressive. She's rough.' And then after that, he would . . . tell me not to send a proposal to a group of female vendors that we were working with that

-12-

knew about our projects." App., V.IV at 1342–43. Even so, in the one incident Tran describes in detail, Taylor asked that Tran tell the vendor to send another female sales representative as a substitute.

While gender stereotypes can be a factor in inferring discrimination, "an isolated and ambiguous comment is generally considered too abstract to support an inference of discrimination." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1151 (10th Cir. 2008). "Without more" we have noted, "an employee's subjective belief in a comment's invidious nature also does not support an inference of discriminatory intent." *Id.* Tran does not point to other evidence of inappropriate work place behavior from Taylor, and she never complained to Sonic about the alleged comments. Finally, she makes no allegation of any discriminatory remarks by Macaluso or any other member of the management team who were familiar with Tran's performance and agreed with Taylor's overall evaluation.[1]

In sum, we have carefully reviewed all of the evidence Tran points us to and from which she claims a jury could make an inference of pretext. Based on that review, we agree with the district court that Sonic was entitled to summary judgment on the wrongful termination claim.

---

[1] Tran also claims that Taylor commented that she was "hard to understand," which she took as a comment on her accent. We agree with the district court that the comment was an isolated incident and does not create doubt about Sonic's reasons for the termination.

-13-

### B.  Other Issues

Tran also challenges the trial court's rulings on two discovery motions and its refusal to grant her motion for partial summary judgment on Sonic's affirmative defense relating to mitigation evidence.  We have carefully reviewed the record and see no abuse of discretion by the district court in granting a protective order.  Nor did the court err in denying additional discovery on witnesses identified by Sonic.  We need not consider the court's summary judgment ruling on Sonic's affirmative defense in light of our affirmance of summary judgment on Tran's Title VII claims.

## III.  Conclusion

For the reasons stated above, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT,

Timothy M. Tymkovich
Circuit Judge

-14-