**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 6, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

LORETTA MAULDIN,

     Plaintiff - Appellant,

v.

No. 24-7010

DANIEL DRISCOLL, Secretary,
Department of the Army,*

     Defendant - Appellee.

_____

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:19-CV-00437-JAR)**

_____

Amber L. Hurst of Hammons, Hurst & Associates, Oklahoma City, Oklahoma, for Plaintiff - Appellant.

Randy Lewin, Assistant United States Attorney (Christopher J. Wilson, United States Attorney, with him on the brief), Muskogee, Oklahoma, for Defendant - Appellee.

_____

Before **HARTZ**, **PHILLIPS**, and **FEDERICO**, Circuit Judges.

_____

**FEDERICO**, Circuit Judge.

_____

    * On February 25, 2025, Hon. Daniel P. Driscoll became the Secretary of the Army. Consequently, his name has been substituted as Defendant, per Federal Rule of Appellate Procedure 43(c)(2).

_____

This is an employment discrimination case, in which Loretta Mauldin sued the Secretary of the United States Department of the Army, asserting claims of retaliation and discrimination on the basis of age under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., and discrimination on the basis of sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The district court granted the Army summary judgment, and Mauldin appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND[1]

In 1991, the Army hired Mauldin, a female born in 1958, to serve at the McAlester Army Ammunition Plant (MCAAP) in McAlester, Oklahoma. In 2003, Mauldin became a WS-6502-06 Explosives Operator Supervisor, which is referred to as a Grade 6 EO Supervisor. Tommy Buckner, a male born in 1971, was Mauldin's second level supervisor, having become the Chief of Ammunitions Operations at MCAAP in April 2014.

### A.  Prior EEO Activity

In early 2015, two employees under Mauldin's supervision were accused of sexual harassment, and one was ultimately fired. MCAAP's

---

[1] Unless otherwise noted, the following facts are not in dispute.

Commanding Officer signed a letter of reprimand and directed Buckner to issue it to Mauldin, but Buckner chose not to issue it after discussing the matter with Mauldin. Mauldin filed an Equal Employment Opportunity (EEO) grievance regarding the sexual harassment accusations, asserting that both of her employees should have been fired and that she disagreed with the result.

In March 2016, Mauldin's first level supervisor issued her a "poor" performance rating. Mauldin's first level supervisor was also supervised by Buckner, and Buckner approved the "poor" rating given to Mauldin. Mauldin challenged the rating and contacted MCAAP's EEO Office, contending that she had always previously received a "highly successful" rating and that her supervisors failed to inform her of any performance deficiencies. Her challenge was successful, and her rating was changed to "highly successful."

Later that year, Mauldin submitted a statement in support of an EEO complaint alleging age discrimination filed by her co-worker, Billy Cloud, a

male born in 1951.[2] In her statement, Mauldin claimed Buckner said, "Y'all know we're not spring chickens. So[,] when you're making your selection for permanent [Grade] 5[]s[,] don't look at the older hands, look at the younger ones because they're our future." Aplt. App. III at 168. She further claimed that Buckner called Cloud "old," telling him it was "time for [him] to go home" because they "need new blood."[3] *Id.* at 86. Although Buckner denied making these statements, he admitted that he encouraged employees to promote younger individuals for permanent positions.

---

[2] In his EEO complaint, Cloud alleged that he was paid less than his younger counterparts. He further alleged that when he announced his retirement, the Army posted his position as a Grade 8 position – two grades higher than it had been, with substantially more pay. When Cloud sought to stay on the job and take advantage of the higher grade and pay, he alleged that the Army rescinded the Grade 8 position.

[3] Apart from age-related comments, Mauldin also claimed that Buckner made sex-related comments. She claimed that he said women do not "make good supervisors" because they are "emotional," "not stern enough," and "need to just be home having babies and taking care of their house." Aplt. App. II at 47; Aplt. App. III at 94.

In late 2017, Mauldin alleged that she and Buckner discussed Cloud's EEO complaint, as well as her statement supporting it.[4] She alleged that Buckner became upset during the discussion, saying he "never forgets" and is "like an elephant" in that way. Aplt. App. III at 165. Mauldin also

---

[4] The parties dispute whether and how Buckner and Mauldin discussed her statement in support of Cloud. On this point, the district court concluded that Mauldin created a "sham" fact issue by providing conflicting declarations. *See* Aplt. App. II at 77 ("[Buckner] did not say anything to my face."); Aplt. App. III at 164–65 ("I was talking to Tommy Buckner and we started discussing the statement I gave to the EEO office in Billy Cloud's case . . . . A couple weeks later, Mr. Buckner again asked me why I had given that statement to the EEO office."). The district court thus disregarded portions of Mauldin's later declaration where she claimed that Buckner directly confronted her about her statement in support of Cloud.

We review this issue for an abuse of discretion and do not find error. *See L. Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1169–70 (10th Cir. 2009). In determining whether an affidavit creates a sham fact issue, we consider whether: "(1) the affiant was cross-examined during [her] earlier testimony; (2) the affiant had access to the pertinent evidence at the time of [her] earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001) (citation omitted). Even if Mauldin was not cross-examined during her earlier testimony, the latter two factors do not weigh in her favor. First, she undoubtedly had access to pertinent information when she gave the earlier testimony because it was based on her own experiences and memory. Second, the earlier testimony did not reflect confusion on whether Buckner approached her directly, instead making it quite clear that Buckner "did not say anything to [her] face." Aplt. App. II at 77. Mauldin fails to show how the district court abused its discretion on this issue. Finding no error, we also disregard portions of her later declaration where she describes Buckner's alleged confrontation of her.

asserted that he told her he "holds a grudge." *Id.* Buckner denied making these statements.

Mauldin claimed that she was "never treated the same" by Buckner after these incidents, and that he rarely speaks to her now. Aplt. App. II at 58. Mauldin also claimed that Buckner said, "nothing good could come" from EEO activity, and that he referred to EEO complainants as "troublemakers." *Id.* at 60, 77.

## B. Failed Promotion Attempt

In April 2018, Mauldin applied to be a Grade 9 EO Supervisor, which would have been a promotion in terms of duties, authority, and pay.[5] After screening applicants for this position, MCAAP's Civilian Personnel Advisory Center issued a "Certificate of Eligibles" to Buckner, which named Mauldin along with five other applicants. According to Buckner, all six applicants were in Grade 6 positions, with similar backgrounds. Five applicants accepted an interview from Buckner, including Mauldin.

As the "Selecting Official" for the position, Buckner was permitted to select any applicant from the Certificate of Eligibles. Although he was not required to do so (nor required to follow the recommendations of any such

---

[5] The Army posted this position on usajobs.gov in early April 2018. *See* Aplt. App. II at 86–94 (job announcement).

6

panel), Buckner convened a three-person interview panel to score the applicants:

- *William Tollett*: Tollett is a male born in 1976. Tollett was formerly the Chief of Ammunitions Operations at MCAAP. At the time of the interviews, he was the Acting Fire Chief in the Risk Management Division. Buckner selected Tollett to be the chairperson of the panel.

- *Jackie Paden*: Paden is a female born in 1972. She was a Supervisory Industrial Specialist in the Process Control Division of Ammunitions Operations.

- *Holly Price*: Price is a female born in 1982. She was a Production Planning Officer of Ammunitions Operations.[6]

Apart from convening the panel, Buckner drafted the following interview questions:

1. This position requires experience in establishing and maintaining effective working relationships with individuals at all levels of management, co-workers and customers.

   Please describe your experience in maintaining working relationships and supporting a team environment. Include the type and level of personnel in your response.

   * * *

2. This position requires the ability to communicate orally and in writing. This may take the form of person-to-person contacts or written correspondence. Proper grammar, composition, accuracy, tact and diplomacy are factors in this element.

---

[6] Mauldin claimed that Price investigated the 2015 sexual harassment accusations. But Price stated that she was not aware of Mauldin's prior EEO activity.

7

Please relate a situation that shows your experience with oral and written forms of communication you have utilized to present information for decision making purposes. Include the level of personnel involved and whether you prepared or performed the communication independently, assisted with the communication or supported the communication.

\* \* \*

3. This job requires that the Supervisor use technology and basic computer[-]generated spreadsheets & programs daily. Briefly describe your experience in using these tools.

\* \* \*

4. What has been your greatest work[-]related accomplishment and how could you see applying similar efforts to obtain similar great results for the Ammunition Operations team?

Aplt. App. II at 115–18. These questions were approved by Buckner's supervisor, John Ross, the Director of Ammunitions Operations. Buckner also drafted scoring criteria: applicants could earn five, ten, or fifteen points per question depending on their performance and response quality.

After conducting the interviews, each panelist independently scored Mauldin the lowest and a different applicant, Scott Harkey, the highest. Harkey is a male born in 1981. Paden and Price separately forwarded their scores to Tollett, who combined their scores with his before recommending to Buckner that Harkey be selected for the promotion. As part of this litigation, the interview panelists explained their reasoning on applicant scoring:

8

- *William Tollett*: Harkey "did the best job answering the questions." *Id.* at 102. He "spoke at length, gave specifics in his answers and addressed most everything. He was head and shoulders above the rest of the candidates with his responses." *Id.* Mauldin "came across like she didn't care if she acquired the position or not. I recall one question about automation and, as part of her answer, she said 'I rarely get on the computer to check emails.' That's just one example." *Id.* Mauldin "ranked last and that was consistent across the board" and "literally came across as if she didn't care if she got the job or not." *Id.*

- *Jackie Paden*: Harkey "answered the questions with the most knowledge and experience." *Id.* at 108. Although Mauldin "has a lot of years in production," her "level of knowledge [is] not at the level of knowledge" Harkey has. *Id.* Compared to the other applicants, Mauldin lacks "[e]xperience with outside customers, giving briefs" to higher-ranked individuals, and "[c]omputer work." *Id.*

- *Holly Price*: Harkey scored "higher across all questions." *Id.* at 113. He "answered the questions better" than the other applicants. *Id.* Simply put, Mauldin "did not answer the questions as thoroughly." *Id.*

Buckner asserted that his usual practice was to follow the panel's recommendation, which he did by selecting Harkey for the position.

## C. Procedural History

After being notified of her non-selection, Mauldin timely lodged an EEO complaint on July 10, 2018. She alleged that the Army discriminated against her because of her age and sex, and also retaliated against her because of her EEO activity.

On August 3, 2018, Mauldin filed a formal discrimination complaint after being notified of her right to do so, alleging the following:

> I was qualified for the position, but the Agency selected a significantly younger male with less qualifications. I believe I

9

was not selected because of my gender (female), age (over the age of forty), and/or in reprisal because I was a witness and gave a statement in support of Billy Cloud as part of his claim of age discrimination against the Agency.

*Id.* at 128. She requested a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Judge, as opposed to a final decision by the Army.

Before any decision was issued as to her formal complaint, Mauldin filed suit in December 2019 against the Army in the United States District Court for the Eastern District of Oklahoma. She filed a second amended complaint in May 2020, asserting claims of retaliation and discrimination on the basis of age under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq., and discrimination on the basis of sex under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq.

In January 2020, Mauldin notified the Army that she was withdrawing her formal EEO complaint and hearing request. An EEOC Administrative Judge subsequently issued an order of withdrawal on January 13, 2020, returning the matter to MCAAP's EEO Office, which

issued a final agency decision on February 24, 2020, dismissing the formal complaint pursuant to 29 C.F.R. § 1614.107(a)(3).[7]

After discovery in the federal lawsuit, the Army moved for summary judgment on all claims, which Mauldin opposed. The district court granted the Army's motion, entering judgment against Mauldin in January 2024. Mauldin timely appeals.

## II.  STANDARD OF REVIEW

We review summary judgment decisions de novo, applying the same standard as the district court. *Koel v. Citizens Med. Ctr., Inc.*, 128 F.4th 1329, 1333 (10th Cir. 2025). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmovant on the evidence presented. *Id.*

---

[7] 29 C.F.R. § 1614.107(a)(3) provides that such a formal complaint shall be dismissed when the basis for it is pending in a United States District Court, and when the "complainant is a party" and "at least 180 days have passed since" the formal complaint was filed.

### III.  DISCUSSION

Mauldin argues that the district court applied the incorrect legal standard. In doing so, she alleges that it erred in considering the Army's evidence, as well as in granting the Army summary judgment on her retaliation and discrimination claims. We take these issues in turn.

### A.  The Army's Evidence

Mauldin argues that the district court erred in considering and crediting the Army's evidence at the summary judgment stage under *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). She specifically challenges the district court's consideration of Buckner's deposition and declaration and the interview panelists' declarations. *See* Op. Br. at 19.

Because Mauldin lacks direct evidence, we analyze her retaliation and discrimination claims under the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1201–02 (10th Cir. 2008). Under this framework, Mauldin must first establish a prima facie case of discrimination and retaliation. *McDonnell Douglas*, 411 U.S. at 802; *Hinds*, 523 F.3d at 1202. If she establishes this, the burden shifts to the Army "to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. Should the Army meet this burden,

Mauldin must "be afforded a fair opportunity to show that [the Army]'s stated reason . . . was in fact pretext." *Id.* at 804.

Relevant here, the *Reeves* Court held that when ruling on a motion for judgment as a matter of law,[8] a court should "review the record as a whole," but "disregard all evidence favorable" to the movant that a jury would not be "required to believe." 530 U.S. at 151. A court should "give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the [movant] that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* (citation omitted). In other words, the *Reeves* Court discouraged the consideration of interested witness evidence.

Mauldin argues that the district court erred when it "credited the uncorroborated testimony of the [interview] panelists and of Buckner" because "such evidence was uncorroborated, unsupported by contemporaneous evidence," and "given only in response to" her complaints of discrimination. Op. Br. at 19. Put simply, Mauldin argues that because this evidence came from interested witnesses, the district court erred in considering it when granting the Army summary judgment.

---

[8] This *Reeves* holding applies equally at the summary judgment stage. *See EEOC v. Picture People, Inc.*, 684 F.3d 981, 989 (10th Cir. 2012).

13

In considering the Army's evidence, the district court emphasized that "employers bear the burden of production at the second *McDonnell Douglas* step to articulate a legitimate, nondiscriminatory reason for the challenged employment action." Aplt. App. III at 259. It reasoned that "[i]f courts were precluded from considering [interested witness evidence], many (if not most) employers would be unable to satisfy the second *McDonnell Douglas* step." *Id.* The district court predicted (correctly) that the Tenth Circuit would agree with its reasoning, despite our court never having decided the issue. *Id.* at 260.

Although we have yet to squarely resolve this issue, we have certainly touched on it.[9] For example, in *EEOC v. Picture People, Inc.*, 684 F.3d 981 (10th Cir. 2012), we said that "[i]n employment discrimination cases, the employer's agents frequently will supply the testimony, yet they cannot be deemed interested parties any more than the dissent can impute bias to them." *Id.* at 990. This was said in response to the dissent's contention that testimony favorable to the employer "comes mostly from its own employees,

---

[9] *See e.g.*, *Magoffe v. JLG Indus., Inc.*, 375 F. App'x 848, 856 (10th Cir. 2010) (unpublished) ("While our summary judgment standard requires us to consider the evidence in the light most favorable to the [nonmovant], it does not require us to disregard undisputed evidence favoring the [movant]." (citing *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1168 (10th Cir. 2007) (McConnell, J., concurring))).

and the jury of course would not be required to accept their testimony." *Id.* at 993 (Holloway, J., dissenting). The dissent in *Picture People, Inc.* thus made the same point that Mauldin argues here: interested witness evidence may not be considered at the summary judgment stage. *Id.* But that argument previously fell short by one vote in our court, and it fails here too.

Our holding aligns with the overwhelming weight of authority, as most circuit courts have unambiguously resolved this issue in favor of the employer, concluding that "interested witness" evidence may be considered at the summary judgment stage. The First Circuit, for instance, held that it "need not exclude all interested testimony, specifically testimony that is uncontradicted by the nonmovant." *Lopez-Hernandez v. Terumo Puerto Rico LLC*, 64 F.4th 22, 30–31 (1st Cir. 2023) (citation omitted). Addressing the same argument made here, it noted that the plaintiff "misread the scope of *Reeves*," and that such an interpretation "would make it impossible for employers at the summary judgment stage to defend against retaliation claims, especially at the second step of" the *McDonnell Douglas* framework. *Id.* The Eleventh Circuit reached a similar conclusion. *See Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1205 n.14 (11th Cir. 2013) ("Indeed, if we were to accept [the plaintiff]'s argument that a district court can never credit an employer's witnesses for purposes of the second stage of the *McDonnell Douglas* analysis, then we'd be categorically barred from considering an

employer's legitimate, non-discriminatory reason for hiring one individual over another."); *see also Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 271–72 (3d Cir. 2007); *Stratienko v. Cordis Corp.*, 429 F.3d 592, 597–98 (6th Cir. 2005); *Traylor v. Brown*, 295 F.3d 783, 791 (7th Cir. 2002); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002).[10]

Mauldin's narrow reading of *Reeves* would make the second *McDonnell Douglas* step largely impossible for an employer to satisfy and, in turn, render the third step meaningless. Consistent with *Reeves*, we hold that a district court may consider interested witness evidence from the movant at the summary judgment stage, so long as a jury would be required to believe such evidence because it is uncontradicted and unimpeached.

## B. ADEA Retaliation Claim

Mauldin argues that the district court erred in granting the Army summary judgment on her ADEA retaliation claim. Because Mauldin lacks direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies. *See Hinds*, 523 F.3d at 1201–02. As discussed, under this framework, Mauldin must first establish a prima facie case of retaliation. *McDonnell Douglas*, 411 U.S. at 802. The district court

---

[10] *See also Luh v. J.M. Huber Corp.*, 211 F. App'x 143, 146 (4th Cir. 2006) (unpublished) (rejecting a similar argument).

concluded that Mauldin failed to satisfy this first step of the *McDonnell Douglas* framework.

To demonstrate a prima facie case of retaliation under the ADEA, a plaintiff must show (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action. *Hinds*, 523 F.3d at 1202. Mauldin undoubtedly engaged in a protected activity by submitting a statement in support of Cloud's EEO complaint and suffered a materially adverse action by not being selected for the promotion.[11] What is less clear, however, is whether she has demonstrated a causal connection between the two events.

"As a prerequisite to this showing, [Mauldin] must first come forward with evidence from which a reasonable factfinder could conclude that" Buckner had knowledge of Mauldin's protected activity. *Id.* at 1203. The parties may dispute whether and how Buckner confronted her about the protected activity, but Mauldin has provided sufficient evidence to demonstrate that Buckner at least knew about such activity. *See* Aplt. App. II at 76 (declaring that Buckner was "aware" of her EEO activity). And

---

[11] The Army does not dispute these two elements.

indeed, "[w]e examine 'the record and all reasonable inferences that might be drawn from it in the light most favorable'" to Mauldin, as the party opposing summary judgment. *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty.*, 546 F.3d 1299, 1306 (10th Cir. 2008) (quoting *Antonio v. Sygma Network*, 458 F.3d 1177, 1181 (10th Cir. 2006)).

With this prerequisite showing, we proceed to the latter steps in the *McDonnell Douglas* framework. But because Mauldin's retaliation claim ultimately fails, we will assume, without deciding, that Mauldin has demonstrated a prima facie case of retaliation under the ADEA. *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1212 (10th Cir. 2007) (assuming plaintiff established a prima facie case and deciding whether employer was entitled to summary judgment based on plaintiff's evidence of pretext); *Stover v. Martinez*, 382 F.3d 1064, 1073 (10th Cir. 2004) (same).

We thus turn to the second step in the *McDonnell Douglas* framework, where the Army carries an "exceedingly light" burden. *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 900 (10th Cir. 2017). The Army is only required "to articulate some legitimate, nondiscriminatory reason" for Mauldin's non-selection. *McDonnell Douglas*, 411 U.S. at 802. But this burden is "one of production, not persuasion; it can involve no credibility assessment." *Reeves*, 530 U.S. at 142 (internal quotation marks and citation omitted).

18

The parties do not dispute that the Army proffered evidence of a legitimate, nondiscriminatory reason for not selecting Mauldin, as it offered evidence that a three-person interview panel recommended Harkey for the vacancy based on the quality of his interview performance. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009) (finding a plaintiff's low ranking among other interviewees to be a legitimate, nondiscriminatory reason for non-selection).

Given this, we turn to the final *McDonnell Douglas* step: pretext. To satisfy this step, Mauldin must present evidence that shows a genuine issue of material fact as to whether the Army's reason was pretextual. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013). The "burden is more demanding" here than at the prima facie step, and it "requires a plaintiff to assume the normal burden of any plaintiff to prove his or her case at trial." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1241 (10th Cir. 2004) (internal quotation marks and citation omitted).

The "evidence in its totality" does not raise "a genuine issue of material fact" regarding Buckner's motive in selecting someone else for the promotion. *Proctor*, 502 F.3d at 1211. Rather, the record is replete with evidence that the hiring process was neutral and void of retaliatory motive. The interview panel process illustrates the reasonable and neutral selection process for this position. And indeed, "it is not our role to act as a super

19

personnel department that second guesses employers' business judgments." *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 865 (10th Cir. 2007) (internal quotation marks and citation omitted). Because of this, we conclude that the district court did not err in granting the Army summary judgment on Mauldin's retaliation claim under the ADEA.

### C. ADEA and Title VII Discrimination Claims

Mauldin lastly argues that the district court erred in granting the Army summary judgment on her age and sex discrimination claims.

We again assess these claims under the *McDonnell Douglas* framework. *See Hinds*, 523 F.3d at 1201–02. Mauldin has made a prima facie showing of discrimination: (1) She is a member of protected classes (age and sex); (2) she suffered an adverse employment action (non-selection); (3) she is qualified for the position at issue (she was one of six applicants selected for an interview); and (4) the challenged action occurred under circumstances giving rise to an inference of discrimination (a younger male was selected for the position instead of her). *See Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (discussing prima facie discrimination elements under the ADEA and Title VII).

As for the second *McDonnell Douglas* step, we note that the parties do not dispute that the Army proffered evidence of a legitimate,

20

nondiscriminatory reason for not selecting Mauldin. *See Turner*, 563 F.3d at 1143 (finding a plaintiff's low ranking among other interviewees to be a legitimate, nondiscriminatory reason for non-selection).

We thus move to the final *McDonnell Douglas* step and consider whether Mauldin has shown a genuine issue of material fact as to pretext. *Tabor*, 703 F.3d at 1218. This evidence can be presented in one of two forms, either by showing (1) the reason is factually false, or (2) discrimination was a primary factor in the action. *Id.* Examples of such evidence include weaknesses, implausibility, inconsistencies, incoherencies, or contradictions in the explanation that a reasonable factfinder could rationally find unworthy of credence. *Id.*

This court has "rejected a pretext plus standard that requires a plaintiff to provide affirmative evidence of discrimination beyond the prima facie case and evidence that the employer's proffered explanation is pretextual." *Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Oklahoma Bd. of Regents*, 125 F.4th 1321, 1337 (10th Cir. 2025) (internal quotation marks and citation omitted). Which is to say, Mauldin need not show both that the Army's "reasons were a pretext *and* that the real reason was discrimination – the fact of pretext alone may allow the inference of discrimination." *Id.* (citation omitted).

Mauldin points to Buckner's alleged discriminatory comments about age and sex, generally. But "isolated [or] ambiguous comments are too abstract" to support a finding of discrimination. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (alteration in original) (internal quotation marks and citations omitted). Mauldin must demonstrate *how* Buckner's comments are evidence of discrimination, but this seems dubious given Buckner's alleged comments were not directed at her or the employment position that was open and for which she was a candidate. *See Plotke v. White*, 405 F.3d 1092, 1107 (10th Cir. 2005) (plaintiff must show more than "random," "general," or "stray remarks"); *see also Ramsey v. Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990) (plaintiff "must show that the employer actually relied on her [sex] in making its decision").

Mauldin emphasizes that Buckner drafted the interview questions, and she argues that the first and third questions are subjective. But "*some subjectivity is to be expected in every hiring decision.*" *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1218 (10th Cir. 2022) (citation omitted). The panel asked each applicant the same questions, using predetermined criteria and scores to determine their ranking. Additionally, the panel consisted of two women and one man, two of whom were over forty years old. What is more, Mauldin does not argue that the second and fourth

22

questions were subjective, but we "typically infer pretext" only when the criteria relied on was "entirely subjective." *Turner*, 563 F.3d at 1145 (citation omitted). And regardless, the first question was merely about leadership and communication skills, while the third question was regarding technology proficiency – a fair expectation given the position required such proficiency.

For pretext, Mauldin must establish that despite the Army's evidence of a reasonable interview process, Buckner chose Harkey for discriminatory reasons. "To show pretext, the disparity in qualifications must be overwhelming." *Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303, 1309 (10th Cir. 2005) (internal quotation marks and citations omitted). Mauldin argues that she had more experience and knowledge than Harkey and thus should have been chosen, but this conclusory argument is hardly overwhelming given the panelists' reasoning on applicant scoring.

Despite Mauldin's argument, uncontroverted evidence suggests that Buckner chose Harkey for other, nondiscriminatory reasons. Mauldin was selected for an interview, and the interview panel consisted primarily of women and individuals over forty years of age.[12] The scoring matrix

---

[12] We again note that Buckner was not required to even form a panel to interview applicants.

23

consisted mostly of objective criteria, and the interview panel unanimously selected and recommended Harkey for several legitimate reasons. Buckner then followed the panel's recommendation in his hiring decision, despite not being required to do so.

There is nothing about the interview questions, panel composition, or this hiring process that is sufficient to establish pretext. *See Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1083 (10th Cir. 2023) ("[A]n employment discrimination plaintiff cannot survive summary judgment where the evidence he produces permits nothing more than a speculative basis for believing discrimination was a motivating factor."). The onus was on Mauldin to demonstrate that a reasonable jury could find in her favor, and she failed to do so. Accordingly, we affirm summary judgment on her discrimination claims under the ADEA and Title VII.

## IV.  CONCLUSION

Mauldin misinterprets *Reeves*, and we join the majority of other circuit courts in concluding that a district court may consider interested witness evidence from the movant at the summary judgment stage, so long as a jury would be required to believe such evidence. To hold otherwise would render the third *McDonnell Douglas* step meaningless. As for Mauldin's retaliation and discrimination claims, we conclude that the district court did not err in granting summary judgment to the Army

because she has failed to show pretext, instead asking us to become a "super personnel department." Accordingly, we **AFFIRM** the district court.